UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| Ernest E. Fordyce, #316723, ) | C/A No. 4:10-136-HFF-TER |
| ) | |
| Petitioner, ) | |
| ) | REPORT AND RECOMMENDATION |
| vs. ) | |
| ) | |
| Warden, Ridgeland Correctional Institution, ) | |
| ) | |
| Respondent. ) | |
| _____ ) | |

Petitioner, Ernest E. Fordyce ("Petitioner/Fordyce"), is an inmate in the custody of the South Carolina Department of Corrections (SCDC). Petitioner, appearing *pro se*, filed his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254[1] on January 25, 2010. Respondent filed a motion for summary judgment on April 9, 2010, along with supporting memorandum. The undersigned issued an order filed April 12, 2010, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising Petitioner of the motion for summary judgment procedure and the possible consequences if he failed to respond adequately. Petitioner filed a response on a May 6, 2010.

### I. PROCEDURAL HISTORY

There has been no significant opposition filed as to the procedural history as set out by the Respondent. Therefore, the undisputed procedural history as set out in Respondent's memorandum

---

[1] This habeas corpus case was automatically referred to the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Rule 73.02, DSC. Because this is a dispositive motion, this report and recommendation is entered for review by the district judge.

will be discussed below.

Petitioner is currently confined at the Ridgeland Correctional Institution of the South Carolina Department of Corrections pursuant to orders of commitment from the Clerk of Court for Clarendon County, South Carolina. Petitioner was indicted at the January 2006 term of the Clarendon County Grand Jury for two separate indictments for Armed Robbery and Possession of a Weapon during a Violent Crime (2006-GS-14-85, 2006-GS-14-0023). Tr. 18-21. On July 20, 2006, Fordyce pleaded guilty as indicted. He was represented by Harry Devoe, Esquire, at the plea hearing. He was sentenced by the Honorable John C. Hayes, III to confinement for a period of fifteen (15) years on armed robbery and five (5) years concurrent for weapon possession on each indictment, concurrent and restitution of $1540. He did not appeal his conviction or sentence.

Petitioner made an application for post-conviction relief on November 17, 2006. Tr. 22-29. Fordyce v. State, 2006-CP-14-532. In his application, he made the following allegations:

1. Ineffective assistance of counsel:

    A. They switched counsel on me on the very day that I had to go to court. I did not know this man and he did not know me. He was not prepared to handle my case.

2. Due Process Violation.

Tr. 24. The Respondent made a Return dated August 14, 2007. On December 17, 2007, an evidentiary hearing was convened before the Honorable George C. James. The Petitioner was present and represented by Charles Brooks, Esquire. The Respondent was represented by Assistant Attorney General Boozer. Testimony was received from the Petitioner and former counsel DeVoe. Tr. 34- 56. On January 25, 2008, Judge James entered his order denying the application in its entirety. Tr. 57-62.

2

Petitioner filed a timely appeal. On December 3, 2008, Katherine Hudgins, appointed appellate defender from the South Carolina Division of Appellate Defense, filed a Johnson Petition for Writ of Certiorari and request to be relieved as counsel pursuant to Johnson v. State, 294 S.C. 310, 364 S.E.2d 201 (1988). In the petition, counsel Hudgins raised the following ground:

> Did the PCR judge err in refusing to find counsel ineffective for failing to request a competency hearing when counsel was aware that petitioner had mental health issues and was taking Zoloft at the time of the guilty plea, and counsel had only been appointed to represent the petitioner the day before.

Johnson Petition, p. 2. The Petitioner made a pro se response which was not served upon Respondent and is not in their possession. On May 14, 2009, the South Carolina Supreme Court entered its order denying the petition and granted appellate counsel's request to be relieved. *Fordyce v. State*, Order (S.C. S.Ct. May 14, 2009). The remittitur was issued on June 2, 2009. Petitioner filed this habeas petition on January 25, 2010.

## II. PETITIONER'S GROUNDS FOR RELIEF

In his *pro se* Petition for Writ of Habeas Corpus, Petitioner raised the following argument:

Ground One:  Ineffective Assistance of Counsel/Involuntary Guilty Plea

    A.    The court switched counsel on me the day before Court. He was not prepared to handle my case. The Court accepted my plea knowing I was on Zoloft.

(Petition).

## III. SUMMARY JUDGMENT

On April 9, 2010, the Respondent filed a return and memorandum of law in support of their motion for summary judgment. As stated, Petitioner filed a response in opposition on May 6, 2010.

3

The federal court is charged with liberally construing the complaints filed by pro se litigants, to allow them to fully develop potentially meritorious cases. See Cruz v. Beto, 405 U.S. 319 (1972), and Haines v. Kerner, 404 U.S. 519 (1972). The court's function, however, is not to decide issues of fact, but to decide whether there is an issue of fact to be tried. The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, Weller v. Department of Social Services, 901 F.2d 387 (4th Cir. 1990), nor can the court assume the existence of a genuine issue of material fact where none exists. If none can be shown, the motion should be granted. Fed. R. Civ. P. 56(c).

The movant has the burden of proving that a judgment on the pleadings is appropriate. Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing that there is a genuine issue for trial." The opposing party may not rest on the mere assertions contained in the pleadings. Fed. R. Civ. P. 56(e) and Celotex v. Catrett, 477 U.S. 317 (1986).

The Federal Rules of Civil Procedure encourage the entry of summary judgment where both parties have had ample opportunity to explore the merits of their cases and examination of the case makes it clear that one party has failed to establish the existence of an essential element in the case, on which that party will bear the burden of proof at trial. See Fed. R. Civ. P. 56(c). Where the movant can show a complete failure of proof concerning an essential element of the non-moving party's case, all other facts become immaterial because there can be "no genuine issue of material fact." In the Celotex case, the defendants are "entitled to judgment as a matter of law" under Rule 56(c) because the Petitioner has failed to make a sufficient showing on essential elements of his case with respect to which he has the burden of proof. Celotex, 477 U.S. at 322-323.

4

## IV.  STANDARD OF REVIEW

Since Fordyce filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended.  Lindh v. Murphy, 117 S. Ct. 2059 (1997); Breard v. Pruett, 134 F.3d 615 (4th Cir. 1998); Green v. French, 143 F.3d 865 (4th Cir. 1998).  That statute now reads:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In a thorough discussion of the application of this statute in Green, the Fourth Circuit stated:

> If a state court decision is in square conflict with a precedent (supreme court) which is controlling as to law and fact, then the writ of habeas corpus should issue; if no such controlling decision exists, the writ should issue only if the state court's resolution of a question of pure law rests upon an objectively unreasonable derivation of legal principles from the relevant supreme court precedents, or if its decision rests upon an objectively unreasonable application of established principles to new facts. In other words, habeas relief is authorized only when the state courts have decided the question by interpreting or applying the relevant precedent in a manner that reasonable jurists would all agree is unreasonable.

See also Fitzgerald v. Greene, 150 F.3d 357, 362 (4th Cir. 1998); Wright v. Angelone, 151 F.3d 151, 156 (4th Cir. 1998); Cardwell v. Greene, 152 F.3d 331, 339 (4th Cir. 1998).  In Williams v. Taylor, 163 F.3d 860 (4th Cir. 1998), the court specifically rejected an argument that the standard of review enunciated in Green, 143 F.3d 865, was erroneous.  Thus, to a large extent, the amendment of § 2254

shifts the focus of habeas review to the state court application of Supreme Court law. See O'Brien v. DuBois, 145 F.3d 16 (lst Cir. 1998) ("the AEDPA amendments to section 2254 exalt the role that a state court's decision plays in a habeas proceeding by specifically directing the habeas court to make the state court decision the cynosure of federal review"). Further, the facts determined by the state court to which this standard is applied are presumed to be correct unless rebutted by the Petitioner by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Wilson v. Moore, 999 F. Supp. 783 (D.S.C. 1998).

## V. ARGUMENTS/FINDINGS

Petitioner argues that his counsel was ineffective because he was appointed the day before the guilty plea to replace prior counsel who was not prepared to handle his case, and the court accepted his plea knowing he was taking Zoloft.

Respondent submits that exhaustion has been satisfied by the issues being raised in the Johnson petition but that the entire petition is without merit.

When presented with an application for habeas relief, the first inquiry by the court is to determine whether the claim raised in the petition was "adjudicated on the merits" by the state court. 28 U.S.C.A. §2254(d). If the claim was properly presented to the state court and the state court adjudicated it, the deferential standard of review set forth in §2254(d) applies and federal habeas corpus relief may not be granted unless the relevant state-court adjudication "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." Id. §

6

2254(d)(1),(2); see Williams v. Taylor, 529 U.S. at 398.

The Sixth Amendment to the United States Constitution guarantees a defendant the right to effective assistance of counsel in a criminal prosecution. McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970). In the case of Strickland, supra, the United States Supreme Court set forth two factors that must be considered in evaluating claims for ineffective assistance of counsel. A Petitioner must first show that his counsel committed error. If an error can be shown, the court must consider whether the commission of an error resulted in prejudice to the defendant.

To meet the first requirement, "[t]he defendant must show that counsel's representation fell below an objective standard of reasonableness." Strickland, at 688. "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." Turner v. Bass, 753 F.2d 342, 348 (4th Cir. 1985) (quoting Strickland, reversed on other grounds, 476 U.S. 28 (1986)). In meeting the second prong of the inquiry, a complaining defendant must show that he was prejudiced before being entitled to reversal. Strickland requires that:

> [T]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

Strickland, at 694.

The court further held at page 695 that:

> [A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct . . . the court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. (Emphasis added.)

In Lockhart v. Fretwell, 506 U.S. 364 (1993), the Supreme Court clarified its definition of

prejudice quoted above, stating that "an analysis focusing solely on mere outcome determination . . . is defective." Instead, an appropriate analysis of prejudice should consider "whether the result of the proceeding was fundamentally unfair or unreliable." Therefore, a court analyzing the prejudice prong should not "set aside a conviction or sentence solely because the outcome would have been different but for counsel's error." See Williams v. Taylor, Nos. 98-14, 98-16, 1998 WL 883336 (4th Cir. Va. Dec. 18, 1998) (quoting Lockhart, at 369-70).

A review of the PCR transcript reveals the PCR judge concluded the following with regard to the ineffective assistance of counsel issue:

> The allegation that the Applicant's guilty plea was rendered involuntary as the result of ineffective assistance of counsel is without merit. This Court finds that every aspect of the Applicant's testimony regarding the deficiencies of his plea counsel's representation was not credible. Specifically, Applicant testified he was on medication at the time of his plea and did not understand the plea or his discussions with counsel.
>
> On cross-examination, Applicant admitted telling the plea court he was satisfied with counsel. Applicant further admitted telling the plea court that although he was on medication, the medication did not affect his ability to understand the plea proceedings. Applicant also acknowledged telling the plea court he understood his rights and the possible penalties and that he was guilty of the charges. The plea transcript further reflects Applicant told the plea court he was pleading freely and voluntarily. The plea transcript also reflects Applicant informed the plea court he didn't want a trial because he knew he was guilty.
>
> Counsel testified the Applicant was not mentally evaluated before the plea. Counsel further testified the Applicant appeared competent and responsive during their discussions and the plea. Counsel indicated he did discuss Applicant's medications with him prior to the plea. Counsel stated he never had any difficulties communicating with the Applicant. Counsel also stated he discussed the elements of the charges and what the State was required to prove with the Applicant. Counsel testified he reviewed the evidence with the Applicant and discussed possible defenses with the Applicant. Counsel also indicated that, in his opinion, he thought it was best for the Applicant to plead because the victim could identify the Applicant and the Applicant's own sister turned him in. Counsel testified it was the Applicant's decision to plead guilty.

8

> This Court finds that Applicant's testimony regarding counsel's performance was not credible. Further, this Court finds that plea counsel's testimony was credible and this Court affords it great weight. This Court finds that the transcript and plea counsel's testimony shows that Applicant understood the consequences of a guilty plea, his Constitutional rights, and the possible sentences. This Court finds that plea counsel was not deficient in any aspect of his representation and performed well within reasonable professional norms for a criminal defense attorney. . . This Court further finds the Applicant also failed to carry his burden of proof to show that but for trial counsel's alleged deficient representation he would have not pled guilty but would have insisted on going to trial. . . . This Court finds counsel adequately met with the Applicant and reviewed the discovery with the Applicant prior to the plea. Furthermore, this Court finds the Applicant's guilty plea was knowingly and voluntarily made. . . this Court further concludes based on observations at the PCR hearing and after a review of the plea transcript, Applicant's guilty plea was not rendered involuntary as a result of the ineffective assistance of counsel. Accordingly, the allegation of involuntary guilty plea resulting from the allegation of ineffective assistance of counsel is denied.
>
> A criminal defendant is competent to enter his guilty plea if "the accused [has] sufficient capability to consult with his lawyer with a reasonable degree of rational understanding and [has] a rational as well as a factual understanding of the proceeding against him." Jeter v. State, 308 S.C. 230, 417 S.E.2d 594, 596 (1992). An Applicant challenging his competency to plead must prove this allegation by a preponderance of the evidence. Id. This Court finds Applicant failed to show he was incompetent at the time of the plea. The plea transcript and counsel's testimony at the PCR hearing clearly reflect Applicant knew what he was doing at the plea and had a complete understanding of his rights and consequences of a guilty plea. This Court finds counsel was not ineffective for failing to investigate Applicant's mental state. Accordingly, this allegation is dismissed.

(Tr. 59-62, PCR Order of Dismissal).

The undersigned concludes that the record supports the state PCR court's holding and it is not contrary to clearly established federal law or an unreasonable determination of the facts in light of the evidence in the state court proceedings. Based on the transcript from the plea, the Court informed Petitioner that he was charged with two counts of armed robbery that could carry 10 to 30 years each , that it is a felony, that the charges do not allow for any suspended sentence or probation, that the charges are a violent offense which restricts one's opportunities to participate in certain

programs while incarcerated, and that the person has to serve 85% of the sentence before being eligible for parole. The Court also informed Petitioner that he was charged with two counts of possession of a firearm or weapon during the commission of a violent offense which carries up to five years in jail and is a felony that does not allow a suspended sentence but can run concurrent. (Tr. 3-4). Petitioner stated that he understood and wanted to plead guilty. (Tr. 5). The Court questioned Petitioner if he was under the influence of anything that would cause him to be intoxicated and Petitioner responded "No, sir." (Tr. 7). Petitioner continued to answer the court's questions stating that he was entering the plea freely and voluntarily, that he understood his right to a trial by jury, that he understood he had the right to remain silent, the right to confront witnesses against him, and the right to have his witnesses come to court and testify. (Tr. 7). Afterwards, Counsel Devoe stated to the court that Petitioner did take "a prescription pill this morning before he came to court." (Tr. 8). The court inquired as to the type of pill to which Petitioner stated a "Zoloft and Giadome." (Tr. 8). Then, the following colloquy took place:

Court: Do they affect your ability to clearly understand what we are doing?

Defendant: Not really. I don't think so.

Court: Okay. Well, you discussed—you've been talking with him this morning, Mr. Devoe?

Mr. Devoe: I have, your Honor.

Court: You believe if affects—feel it affects him in any way in regard to his–

Mr. Devoe: I didn't perceive any difference of —today from talking to him yesterday, no.

(Plea, Tr. 8).

The Court continued to question the Petitioner as to his understanding of the plea and the rights he was giving up. Also during the plea, Petitioner stated that he was not going to fight the

10

charges because "I'm saying I'm guilty. . . It don't make no sense for me to fight when I know I'm guilty." (Tr. 11). The solicitor stated the following facts during the plea to which Petitioner stated he agreed with the facts with reference as to what happened at the two stores:

> Your Honor, on the first one, July 7, 2005, this occurred at the New Country Corner Store. That store is owned by Ben Jordan, who is in the courtroom today seated in the green shirt. Mrs. Annie Aiken is the clerk. She is also here today.
>
> Mr. Fordyce came into that store around 9:30 pm, pointed at gun at Mrs. Aiken and demanded the money in the cash register. From that cash register he received over a thousand dollars. He took the money and left. There was not a working video and they didn't have any leads at that time.
>
> Late on July 28th a victim from the River Road Grocery stated that Mr. Fordyce came in, asked if they had any spinner bait. The victim is Tracy Timmons.
>
> He then went back out to the car and came back in with a black handgun, pointed it at the victim and said, this is a stick-up, give me all your money. He received $40 from that store.
>
> It wasn't until September 1, 2005 when there was a report of dog fighting going on near Williamsburg County that one of our deputies who happens to live out in that area responded to that call, and Mr. Fordyce's sister said, my brother robbed the River Road Grocery and the New Country Corner. So of course, that was their lead and they got Mr. Fordyce who then admitted to everything.

(Plea, Tr. 12-13).

After hearing from one of the victims, Petitioner's counsel, stated the following to the court:

Devoe: Thank you, your Honor, Mr. Fordyce is 27 years old and went into the 11th grade at Berkeley High School. He has one child, a boy nine years old.

He has been in Mental health evaluation earlier on the other earlier crime and that's the reason he's on Zoloft and the other medication he's on, I think to control him, his emotions or his - - metabolism, but I think he understood what he was doing- -

Court: Hate to interrupt you, but any court-ordered evaluation on these charges?

Devoe: No, sir. No.

11

| | |
|---|---|
| Court: | Go ahead. |
| Devoe: | I–understanding he knew what he was doing, he has freely admitted to these charges. He's standing before you because he didn't want to go to trial and, you know, thinks you're a fair judge, and we—Mrs. Land offered the negotiated sentence of 15 years and [he] is willing to take that 15 year sentence. |
| | He knows he did it. He's admitted to you he did it. And I would ask you to accept the negotiated plea. |

(Plea Tr. 16).

The Court then sentenced Petitioner to 15 years on both the armed robberies and "[b]oth for the possession of weapon during a commission of a violent crime, five years. They are all to run concurrent with each other." (Tr. 16).

At the PCR hearing, the following testimony/colloquy took place between plea counsel, Devoe, and Petitioner's PCR counsel, Brooks, with regard to whether or not Petitioner should have been evaluated to see if he was mentally competent, quoted verbatim:

| | |
|---|---|
| Brooks: | Okay. Did you at anytime have him evaluated mentally? |
| Devoe: | No. |
| Brooks: | Did you talk to him in detail about the medications that he was taking? |
| Devoe: | I talk to him about himself, you know, the . . . I usually talk to somebody with interview sheet and I have and I knew he was in Federal probation at one point and I know that he was under slight disability because he was slow and he was on SSI from social security. |
| Brooks: | Did you. . . once you found that out did you investigate that and determine what the nature of his disability was? |
| Devoe: | No. He was on his medication, Zoloft and the other that was just mentioned to me in the trial transcript that I mentioned to the judge. |
| Brooks: | Did you. . . obviously you said you did not investigate. You did not talk to any doctors about Mr. Fordyce. Is that correct? |

| | |
|---|---|
| Devoe: | No, you see, when I talked to him he seemed to be competent and answer my questions. We talked about what was going on with this case. The fact who I was and the fact that the solicitor had at one point offer o[n] table of the week before. By letter of June 29 actually offering him he could have twenty-five years in both counts of armed robbery and that . . . .actually the same time I was appointed so I managed to get the solicitor down to recommend an offer of fifteen years negotiated sentence for armed robbery rather than the twenty-five he'd offered twenty days before. |
| Brooks: | Did you have an opportunity to evaluate the facts in this case? |
| Devoe: | Well, I saw the warrants. I saw the incident reports and the day of the plea one of the victims was there and I talked to her and she was going to identify him as having a gun pointed in the face by him. |

(PCR Tr. 47-49).

Mr. Devoe also testified that he saw Petitioner testify at the PCR hearing and stated that his demeanor and response to the questions were similar to how he was at the guilty plea. Further, Devoe testified that he did not have a difficult time communicating with Petitioner and did not have any reasons to think a mental evaluation was appropriate. Devoe stated that if he had had some difficulty communicating with Petitioner he would have asked for a mental evaluation.(PCR Tr. 50). Devoe testified that he took over the case as a public defender because the other public defender realized he had a conflict at the last minute and that Devoe negotiated the plea after he had spent the day before the plea talking to Petitioner at length at the courthouse. Devoe testified that he saw no need to request a continuance because the negotiated sentence was the minimum sentence for the charges and that he thought it was a good offer to grab. Devoe testified at the PCR hearing that there was never any indication that Petitioner did not understand their discussions and that if they had proceeded to trial he thought Petitioner would have been convicted. (Tr. 52).

The undersigned concludes that the PCR Court's determinations were not contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the

Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the record. Petitioner stated that he was guilty of the crime, his sister was the one that reported him, one of the victims was in the courtroom, and Petitioner stated several times to the court that he was in fact guilty so he was not going to fight the charges. It was brought to the court's attention by his attorney that Petitioner had taken Zoloft the morning of the plea hearing but that this did not affect his ability to understand the procedure and what he was pleading guilty to that day. Petitioner did not present expert testimony or other evidence to support his contention but only his testimony that he was not competent which the PCR court found not to be credible.

Even assuming, *arguendo,* that Petitioner's counsel was found to be ineffective with respect to these issues, Petitioner has not shown prejudice. Again, Petitioner only presented his own testimony that taking Zoloft affected or could have affected his understanding or actions during the plea. Petitioner did not present any evidence that he has ever been deemed mentally incompetent or that he was not capable of understanding the plea proceedings.

As the PCR court's rejection of the ineffective assistance of counsel ground for relief did not result in an unreasonable application of Hill and Strickland and was not based upon an unreasonable determination of facts in light of the state court record, this ground is without merit. The state court decisions did not involve a decision that "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." § 2254(d)(1), (2); Williams, supra. Thus, the undersigned recommends that the Respondent's motion for summary

14

judgment be granted on this issue.

## VI.  CONCLUSION

Based on the foregoing, it is recommended that Respondent's motion for summary judgment (document #15) be GRANTED and Petitioner's petition for Writ of Habeas Corpus should be denied, and this Petition dismissed.

Respectfully submitted,

s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

October 1, 2010
Florence, South Carolina

**The parties' attention is directed to the important notice on the next page.**